UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
DAVIDSON HEIGHTS LLC,                                :
                                                     :      **OPINION AND ORDER**
                                    Plaintiff,       :
                                                     :      14 Civ. 930 (ER)
            - against -                              :
                                                     :
NEW YORK CITY HOUSING AUTHORITY (NYCHA)  :
and JOHN RHEA, as Chairman of NYCHA,                 :
                                                     :
                                    Defendants.      :
------------------------------------------------------------------------x

Ramos, D.J.:

      Plaintiff Davidson Heights LLC ("Plaintiff" or "Davidson Heights"), the owner of a building located at 1285 Shakespeare Avenue, Bronx, New York, brings this suit pursuant to 42 U.S.C. § 1983, alleging that the New York City Housing Authority ("NYCHA") and John Rhea, Chairman of NYCHA[1] (collectively, "Defendants"), violated its due process rights by failing to pay monies purportedly owed for Plaintiff's former tenant's rent subsidies. In particular, Plaintiff alleges that NYCHA failed to comply with the federal statute and regulations governing the federal Section 8 housing program, as well as NYCHA's own policies. Davidson Heights also alleges that the non-payment of the housing subsidies constitutes unjust enrichment under New York law. Pending before the Court is Defendants' motion to dismiss the Complaint. Doc. 8. For the reasons set forth below, Defendants' motion is GRANTED.

---

[1] According to Defendants, John Rhea resigned as Chairman of NYCHA effective January 3, 2014. Defs. Mem. L. 1 n.1.

**I. Background**

    **a. Factual Background**

The following facts are based on the allegations in the Complaint, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Section 8 is a federal housing subsidy program for low income tenants of privately-owned buildings that is administered by the United States Department of Housing and Urban Development ("HUD"). Compl. ¶ 10. Defendant NYCHA is a local Public Housing Authority charged with the administration of a program governed by Section 8 of the United States Housing Act of 1937. *Id.* ¶¶ 7, 10. In this capacity, NYCHA oversees the administration of 92,000 housing vouchers in the City of New York. *Id.* ¶ 7. According to the Complaint, one such voucher was issued to Maria Silverio ("Ms. Silverio"), Plaintiff's former tenant. *Id.*

Under the Section 8 program, NYCHA enters into Housing Assistance Payment ("HAP") contracts with participating landlords, pursuant to which NYCHA provides payments directly to landlords to subsidize the cost of housing for low-income tenants. *Id.* ¶ 11. In order for an apartment to qualify as suitable under the Section 8 program, it must meet certain Housing Quality Standards ("HQS"). *Id.* ¶ 15. Though the tenant is required to fix any damage he or she causes, the landlord is otherwise responsible for maintaining the habitability of a Section 8 apartment. *Id.* ¶ 17.

As a Public Housing Authority, NYCHA must follow certain guidelines implemented by HUD. *Id.* ¶ 9. In particular, NYCHA is required to conduct initial and annual inspections of Section 8 apartments, as well as special or "complaint" inspections. *Id.* ¶ 18. Public Housing Authorities are required to terminate program assistance to property owners who fail to correct

HQS deficiencies within specified time periods. *Id.* ¶ 22. If an HQS violation is issued, the landlord has 24 hours to correct life-threatening conditions, and 30 days to correct other conditions. *Id.* ¶ 23. NYCHA must then verify that HQS violations have been corrected through either a re-inspection or the submission of a Certification of Completed Repairs signed by the landlord and tenant. *Id.* ¶ 24. HAP contracts are automatically terminated 180 days after the last subsidy payment to the landlord. *Id.* ¶ 27.

According to the Complaint, NYCHA failed to make housing subsidy payments to Davidson Heights for the apartment formerly occupied by Ms. Silverio (the "Apartment"), which is located at 1285 Shakespeare Avenue, Bronx, New York. *Id.* ¶ 41. Ms. Silverio was a recipient of monthly Section 8 rental subsidies from NYCHA in the amount of $1,031.86. *Id.* ¶¶ 42, 43. Total rent for the Apartment was $1,396.86. *Id.* ¶ 43.

On December 1, 2011, NYCHA performed an inspection of the Apartment without prior notice to Davidson Heights.[2] *Id.* ¶¶ 46, 47. On December 5, 2011, Plaintiff received an HQS violation for the Apartment. *Id.* ¶ 47. After it corrected the violation, Plaintiff and Ms. Silverio signed a NYCHA Certification of Completed Repairs, which was then faxed to NYCHA on

---

[2] The parties disagree as to when Davidson Heights became the landlord of the building for relevant purposes. The 1285 Shakespeare Avenue property was formerly owned by Adegboyega Otufale ("Mr. Otufale"). *See* Compl., Ex. D. Plaintiff contends that Mr. Otufale had no interests in the rents or building as of November 7, 2011, the date on which Mr. Otufale entered into a stipulation with Davidson Heights whereby, according to Plaintiff, Mr. Otufale agreed that Plaintiff was entitled to all rents from the property and consented to the entry of foreclosure in favor of Davidson Heights. Pl. Opp. Mem. L. 2, 6. Defendants claim that the November 7, 2011 stipulation does not address the HAP contract for the Apartment that Mr. Otufale entered into with NYCHA in 2002 or any Section 8 subsidies owed to him thereunder, and that Davidson Heights did not acquire any rights in the property until it received a Referee's Deed on July 23, 2012, after foreclosure and sale. Defs. Reply Mem. L. 2, 4. Consistent with the Defendants' account of the foreclosure proceedings, the Referee's Deed provides that the referee *therein* granted and conveyed all right, title, and interest in the property to Davidson Heights. *See* Declaration of Matthew Dineen In Support of Defendants' Motion to Dismiss ("Dineen Decl."), Ex. 3. Defendants also point to NYCHA's guidelines for Section 8 vendor change submissions, which requires that limited liability corporations seeking to become vendors of properties subject to Section 8 subsidies submit a copy of the recorded deed for the property, or an original letter from the buyer's attorney if the deed is unrecorded. Defs. Reply Mem. L. 4; *see* Pl. Opp., Ex. L. For the purposes of today's decision, the Court will, in accordance with Rule 12(b)(6), assume that Davidson Heights was the landlord for events occurring on or after November 7, 2011.

January 15, 2012.  *Id.* ¶¶ 49, 50.  Contrary to HUD Guidelines and NYCHA policy, however, NYCHA did not reinstate Section 8 payments for the Apartment.  *Id.* ¶ 51.  Beginning in February 2012, NYCHA withheld the monthly payments on the basis of the December 2011 HQS and subsequent violations.  *Id.* ¶ 44.

On May 8, 2012, NYCHA re-inspected the Apartment and issued a new HQS violation.  *Id.* ¶ 52.  After it corrected this violation, Davidson Heights and Ms. Silverio executed another certification, which Plaintiff faxed to NYCHA on May 25, 2012.  *Id.* ¶ 54.  Again, NYCHA did not reinstate Section 8 payments.  *Id.* ¶ 55.  Plaintiff alleges that NYCHA has not re-inspected the Apartment since May 2012.  *Id.* ¶ 56.[3]

In August 2012, without notice to Davidson Heights,[4] NYCHA issued a voucher to Ms. Silverio that would allow for the transfer of her Section 8 assistance to a new property upon her relocation from the Apartment.  *Id.* ¶ 57.  Plaintiff claims that this transfer voucher—which was due to expire approximately 120 days from its issuance—was extended or reissued multiple times.  *Id.* ¶ 58.

In September 2012, Davidson Heights called NYCHA to inquire about the status of the Section 8 subsidy payments.  *Id.* ¶ 60.  A NYCHA representative told Plaintiff that Ms. Silverio's move was pending; however, the representative did not know when the past-due payments would be made.  *Id.*

---

[3] According to Defendants, however, NYCHA re-inspected the Apartment on June 13, 2012, and the Apartment again failed inspection.  Defs. Mem. L. 6.  Defendants further contend that in July 2012, NYCHA mailed a notice to *Mr. Otufale* advising that NYCHA had terminated the subsidies for the Apartment, effective June 30, 2012, based on the expiration of the 180-day period following the final subsidy payment in December 2011.  *Id.*

[4] Defendants contend that Section 8, its implementing regulations, and the HAP contract do not require that a Public Housing Authority provide notice to a landlord of its inspection of an apartment.  Defs. Mem. L. 5.  However, NYCHA's Inspection Process Overview, which is attached as an exhibit to the Complaint, states that NYCHA will notify the tenant and the landlord of an inspection appointment at least two weeks in advance of the inspection date.  *See* Compl., Ex. B.

In October 2012, Davidson Heights commenced an eviction proceeding against Ms. Silverio in Bronx County Housing Court. *Id.* ¶ 62. On February 27, 2013, Ms. Silverio and a NYCHA representative appeared in court in connection with this proceeding. *Id.* ¶ 63. On that date, Plaintiff and Ms. Silverio entered into a Stipulation of Settlement. *Id.*; *see* Compl., Ex. J.[5]

Also in February 2013, counsel for Ms. Silverio confirmed that her move from the Apartment was pending. Compl. ¶ 67. According to the Complaint, this was the first time Davidson Heights received confirmation that NYCHA had issued a transfer voucher to Ms. Silverio. *Id.* ¶ 68.

In February, May, and July 2013, Plaintiff again contacted NYCHA concerning the status of the past-due payments. *Id.* ¶¶ 70-72. On each occasion, a NYCHA representative confirmed that a transfer voucher had been issued to Ms. Silverio, and that her move was pending, but the representative did not know when the Section 8 payments would be made. *Id.*

Ms. Silverio surrendered the Apartment on August 5, 2013. *Id.* ¶ 76. Plaintiff alleges that NYCHA owes it $19,605.34, which represents the monthly subsidy payments for the period February 2012 through August 2013. *Id.* ¶ 78. According to the Complaint, NYCHA did not provide Davidson Heights with written notice that (i) the Section 8 payments had been suspended, (ii) a transfer voucher was issued to Ms. Silverio, or (iii) NYCHA terminated the HAP contract for the Apartment. *Id.* ¶ 61.

---

[5] Pursuant to the Stipulation of Settlement, Ms. Silverio agreed to pay Davidson Heights her share of rent for January and February 2013 on the date of the court proceeding, and the parties agreed to adjourn the matter for possible settlement. Compl., Ex. J.

### b. Procedural Background[6]

Plaintiff commenced this action on February 13, 2014. Doc. 2. The Complaint alleges three due process violations, respectively relating to NYCHA's failure to (i) comply with its policy for the correction of HQS violations; (ii) comply with its policy for the reinstatement of Section 8 subsidy payments following the correction of HQS violations; and (iii) provide Plaintiff with notice of, *inter alia*, the abatement of the subsidy payments in connection with Ms. Silverio's apartment. Plaintiff also brings a claim for unjust enrichment under New York state law.

Pending before the Court is Defendants' motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants contend that the Complaint fails to state a claim because Plaintiff has not alleged that it was party to a HAP contract with NYCHA for the Apartment, and that, even if Plaintiff were a party to such a contract, the contract would not confer a right entitled to protection under the Due Process Clause. Defendants further argue that even if Plaintiff did enjoy such a right, an Article 78 proceeding provided Plaintiff with adequate post-deprivation process.[7] Defendants also claim that the instant lawsuit is barred by the doctrine of *res judicata* because Plaintiff commenced two Article 78 proceedings against Defendants arising out of the same transactions, alleging the same harm, and seeking the same

---

[6] According to Defendants, Plaintiff previously commenced two Article 78 proceedings against NYCHA in New York Supreme Court, Bronx County. Defs. Mem. L. 6-7. On November 25, 2013, Justice Mark Friedlander dismissed the first action, which was filed in December 2012, on standing and statute of limitations grounds. *Id.* at 7. On December 3, 2013, Justice Lucindo Suarez dismissed the second action, which was filed on September 19, 2013, for failure to comply with the statute of limitations for Article 78 proceedings. *Id.*

[7] Defendants contend that the Complaint fails to state a claim for the further reasons that Davidson Heights has not alleged that Defendants acted under color of state law, as required of a Section 1983 cause of action, and because there is no private right of action under Section 8 of the Federal Housing Act or related regulations.

relief as in this litigation. Defendants contend that each Article 78 proceeding was dismissed on the merits.[8]

## II. Standard of Review

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145; *see also, e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

---

[8] Because of the Court's conclusion that Plaintiff was afforded sufficient process through the Article 78 proceedings, the Court need not consider whether the dismissals of those actions bar the instant action on *res judicata* grounds.

**III. Discussion**

    **a. Section 1983 Due Process Claims**

To state a claim under 42 U.S.C. § 1983, a defendant must have been acting under the color of state law when he deprived the plaintiff of a constitutional or federal statutory right. *West v. Atkins*, 487 U.S. 42, 48 (1986). Section 1983 does not create any rights, but merely provides "a procedure for redress for the deprivation of rights [already] established." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Second Circuit has held that it is "well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (internal quotation marks omitted).

"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by [federal or state law] and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir. 1995) (citations omitted). To possess a federally protected property interest, a person must have a legitimate claim of entitlement to it. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Such a claim does not arise from the Constitution, but rather from an independent source such as state or local law. *Id.*; *see also Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996). "An abstract need, desire or unilateral expectation is not enough." *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) (citing *Roth*, 408 U.S. at 577).

Davidson Heights argues in opposition to the instant motion that it had a right entitled to protection under the Due Process Clause based on its automatic assumption of the HAP contract

for the Apartment upon Plaintiff's ownership of the 1285 Shakespeare Avenue building. Pl. Opp. Mem. L. 3. However, Section 14 of Part B of the HAP contract Mr. Otufale executed for the Apartment specifically states that the owner may not assign the HAP contract to a new owner without NYCHA's prior written consent. Dineen Decl., Ex. 2;[9] *cf. Urban Developers LLC v. City of Jackson*, 468 F.3d 281, 297 (5th Cir. 2006) (concluding that plaintiff developer could not assert breach of contract claim against Public Housing Authority because minutes of a Public Housing Authority board of commissioners meeting did not reflect the commissioners' approval of the assignment of the HAP contracts in questions, and there was therefore insufficient evidence of the valid assignment of the contracts); *see also One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, No. 09 Civ. 642 (DBH), 2012 WL 1458202, at *3 n.2 (D. Me. Apr. 17, 2012), adopted by, 2012 WL 2962914 (D. Me. July 20, 2012), aff'd, 716 F.3d 218 (1st Cir. 2013), cert. denied, 134 S. Ct. 986 (2014) (stating that the plaintiff landlords, who were not party to the original HAP contracts, became successors-in-interest to rights arising from the contracts based on assignments approved by HUD and the Public Housing Authority). In opposition to the instant motion, Davidson Heights cites a 2009 version of the form HAP contract for Section 8 properties, which provides, in accordance with Section 703(2) of the Protecting Tenants at Foreclosure Act of 2009, that the immediate successor in interest pursuant to the foreclosure of any property subject to Section 8 subsidies shall assume such interest subject to the HAP

---

[9] Davidson Heights did not attach the HAP contract to the Complaint. However, because the Complaint is premised on Plaintiff's contentions that NYCHA failed to make required housing subsidy payments to Davidson Heights pursuant to the contract and that the contract was not terminated, the contract is integral to the Complaint and the Court will consider it in deciding the instant motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that, in resolving a motion to dismiss, a court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference, and any document not incorporated by reference where the complaint relies heavily upon its terms and effect, rendering the document integral to the complaint).

contract between the prior owner and the Public Housing Authority.[10] Pl. Opp. Mem. L. 3; *see* Pl. Opp., Ex. K.[11] Defendants argue in response that there was no HAP contract for the Apartment at the time Davidson Heights became successor in interest to the 1285 Shakespeare Avenue property pursuant to the Referee's Deed because the contract had already been terminated on June 30, 2012, upon the expiration of the 180-day period following the final subsidy payment. Defs. Reply Mem. L. 4-5. In light of today's dismissal on other grounds, however, the Court need not decide whether Plaintiff had a valid HAP contract with NYCHA during the relevant time period, or otherwise became a successor to such contract as a matter of law upon its purchase of the building.

The Complaint is properly dismissed because, even assuming that Davidson Heights possessed a property interest protected under the Due Process Clause as landlord of the Apartment, it had an adequate post-deprivation proceeding for the alleged denial of that right. In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court set forth a three-factor balancing test for evaluating a procedural due process claim: (1) the private interest, (2) the risk of an erroneous deprivation (and the value of additional safeguards), and (3) the government's interest. Courts in this Circuit that have analyzed due process claims relating to public contractual rights under this framework have generally regarded post-deprivation proceedings as a sufficient remedy for the alleged denial of such rights. For example, in *S & D Maintenance*

---

[10] Plaintiff references the 2009 version of the form HAP contract only in opposition to the instant motion and it therefore is not integral to the Complaint. However, even if Plaintiff was correct that it assumed its interest in the 1285 Shakespeare Avenue property subject to the HAP contract for the Apartment, this would not change the Court's conclusion that due process was satisfied by the availability of Article 78 proceedings.

[11] In the Article 78 proceeding before the Honorable Mark Friedlander of the New York Supreme Court, Bronx County, the court determined that Davidson Heights did not have standing to bring the action against NYCHA based on Davidson Heights' failure to produce (i) a HAP contract for the Apartment to which it was party; (ii) NYCHA's written consent to the assignment of Mr. Otufale's HAP contract—which the court stated was required in order for NYCHA to permit such assignment; or (iii) a vendor number demonstrating Davidson Heights' participation in the Section 8 program. *See* Dineen Decl., ¶ 20.

*Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988), the Second Circuit noted that even if all public contract rights warranted the procedural protection of due process, there would be a substantial argument that in most circumstances post-deprivation state court remedies—such as Article 78 proceedings—would provide all the process that is due.  In that case, the court upheld the grant of summary judgment against the plaintiff contractor holding that it did not have a constitutionally protected right to the continuation of its contract with the City of New York for the maintenance of parking meters.  *Id.* at 967.  In reaching its conclusion, the Second Circuit distinguished cases where due process is invoked to protect an ordinary contractual right from those where procedural protection is sought in connection with a state's revocation of a *status*, *i.e.*, "an estate within the public sphere characterized by a quality of extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits."  *Id.* at 966; *cf. Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987) ("A contract dispute [with the State] does not give rise to a cause of action under section 1983."); *A.F.C. Enters., Inc. v. New York City Sch. Constr. Auth.*, No. CV-98-4534 (CPS), 1999 WL 1417210, at *10 (E.D.N.Y. June 29, 1999) (stating that the Second Circuit has repeatedly rejected attempts to expand simple contract disputes into federal constitutional claims).

In *35-41 Clarkson LLC v. New York City Housing Authority*, No. 11 Civ. 6770 (PKC), 2012 WL 5992094, at *1 (S.D.N.Y. Nov. 30, 2012), the court dismissed a putative class action brought by landlords participating in the Section 8 program against NYCHA.  As in this case, the plaintiffs in *35-41 Clarkson* claimed that NYCHA failed to comply with, *inter alia*, regulations governing the Section 8 program as well as its own policies, and that such noncompliance constituted a denial of their Fourteenth Amendment due process rights.  *Id.*  And as here, the

plaintiffs sought compensatory damages as well as equitable relief to remedy the alleged denial of due process. There, the court noted that it was perhaps a close question as to whether the landlords (who *had* entered into HAP contracts with NYCHA) adequately asserted a property right capable of protection under the Due Process Clause. *Id.* at *3. Regardless, the court held that post-deprivation state court remedies provide a sufficient process for the denial of the property interests conferred by the public contracts at issue there. *Id.* at *5 ("This proposition is supported by the *Mathews* factors as well as relevant Supreme Court and Second Circuit case law, and it is therefore adopted on the facts of this case."). In reaching this conclusion, the court found that review of the plaintiffs' contentions pursuant to an Article 78 proceeding encompassed the landlords' claims, which included allegations that NYCHA failed to resume subsidy payments following the identification of an HQS violation. *Id.* at *6;[12] *cf. Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 103 (2d Cir. 1988), *cert. denied*, 488 U.S. 889 (1988) (holding that the widow of a former city employee was not entitled to pre-deprivation hearing in connection with the pension fund defendant's failure to pay survivor benefits); *Sbarra v. Port Auth.*, No. 10 Civ. 8580 (CM), 2011 WL 4344078, at *15 (S.D.N.Y. Sept. 9, 2011) (granting motion to dismiss a due process claim brought by Port Authority Police Department officers involving allegations that the Port Authority improperly altered the method by which their compensation was calculated; the court noted that the plaintiffs at most alleged a breach of their employment contract, and therefore the claim was "no more than a state law breach of contract action dressed up in federal clothes"); *Licopoli v. Mineola Union Free Sch. Dist.*, No. 09

---

[12] In *35-41 Clarkson*, the court also noted that the plaintiff landlords could also have brought a breach of contract action, and therefore that their remedies in state court may not have been limited to an Article 78 proceeding. 2012 WL 5992094, at *7. The court did not take a position on the merits of such an action, however, and instead concluded that due process was satisfied on the availability of the Article 78 proceeding alone. *Id.*

Civ. 3974 (DRH) (AKT), 2010 WL 4961667, at *12 (E.D.N.Y. Dec. 1, 2010) (granting motion to dismiss on the basis that even if the school superintendent plaintiff had a protectable property interest in an annual merit increase provided for by contract, post-deprivation remedies including a state law contract claim and an Article 78 proceeding were adequate).

Davidson Heights has not identified any case law for the proposition that landlords who enter HAP contracts with Public Housing Authorities such as NYCHA are entitled to anything more than post-deprivation proceedings in connection with the alleged denial of rights relating to Section 8 assistance.[13] Instead, Plaintiff claims that Article 78 proceedings do not satisfy due process because landlords are "required to accept NYCHA Section 8 and may not opt out of Section 8." Pl. Opp. Mem. L. 8. Davidson Heights has not offered any support for this argument, however. And as Defendants note, it is well-settled that the availability of an Article 78 proceeding to review, challenge, or compel agency actions fully satisfies due process requirements in cases such as this. Defs. Mem. L. 14. Accordingly, as in *35-41 Clarkson*—again, where the existence of the landlords' contracts with NYCHA was not in dispute—the Court finds that the post-deprivation remedies afforded to Plaintiff were sufficient as a matter of law.[14] Defendants' motion to dismiss the due process claims is therefore GRANTED.[15]

---

[13] The only case Plaintiff cites involving a due process claim related to Section 8 assistance is *McNeill v. New York City Housing Authority*, 719 F. Supp. 233 (S.D.N.Y. 1989). There, the court held that tenants had standing to assert Section 1983 claims against NYCHA relating to its policies and practices concerning the suspension and termination of assistance. *Id.* at 245. However, *McNeill* is not relevant here because it did not involve the landlord's purported property interest in receiving rental subsidies pursuant to a HAP contract, but instead the tenants' interest in federal housing benefits.

[14] Defendants contend that Plaintiff's federal causes of action are deficient for the further reason that there is no private right of action under Section 8 of the Housing Act or its implementing regulations. Indeed, courts in this Circuit have dismissed claims relating to Section 8 subsidy payments on this basis. *See, e.g.*, *35-41 Clarkson*, 2012 WL 5992094, at *8-9 (finding no express or implied private right of action for landlords to allege claims based upon NYCHA's alleged violations of 42 U.S.C. § 1437f and 24 C.F.R. Part 982); *Renaissance Equity Holdings LLC v. Donovan*, No. 12-CV-1639 (FB) (SMG), 2013 WL 2237547, at *5 (E.D.N.Y. May 21, 2013) (dismissing complaint involving allegations of untimely notification of HQS violations and related non-payment of Section 8 rental subsidies to property owner plaintiffs because the Housing Act does not provide a private right of action). However,

### b. Unjust Enrichment

Plaintiff further alleges that NYCHA has been unjustly enriched by the HAP payments it has withheld from Plaintiff. Compl. ¶ 99. Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim. 28 U.S.C. § 1367(c)(3).

Therefore, Plaintiff's unjust enrichment claim is DISMISSED without prejudice.

### IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion (Doc. 8) and close the case.

It is SO ORDERED.

Dated: October 31, 2014
New York, New York

Edgardo Ramos, U.S.D.J.

---

the Complaint in this action is distinguishable from those cases because Plaintiff's federal causes of action allege due process violations, rather than standalone violations of Section 8 of the Housing Act and its implementing regulations. *See 35-41 Clarkson*, 2012 WL 5992094, at *8 (discussing private right of action issue in the context of the claim brought under 42 U.S.C. § 1437f and 24 C.F.R. Part 982; as discussed above, plaintiffs also brought due process claims under Section 1983); *Renaissance Equity Holdings*, 2013 WL 2237547, at *1 (complaint alleged violations of only 42 U.S.C. § 1437f and implementing regulations, not the Due Process Clause); *see also Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *15 (E.D.N.Y. Sept. 2, 2014).

[15] Defendants also challenge the federal claims on the basis that Plaintiff has not alleged that they acted under color of state law. Because the due process claims have been dismissed on other grounds, however, the Court need not consider this argument.